Benjamin Gould (SBN 250630)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
(206) 623-1900, Fax (206) 623-3384
bgould@kellerrohrback.com

*Attorney for Defendants Derek Loeser and Keller Rohrback L.L.P.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID R. PETE,<br><br>Plaintiff,<br><br>v.<br><br>DEREK LOESER, AN INDIVIDUAL; LESLEY WEAVER, AN INDIVIDUAL; KELLER ROHRBACK L.L.P., A LIMITED LIABILITY PARTNERSHIP; BLEICHMAR FONTI & AULD LLP, A LIMITED LIABILITY PARTNERSHIP,<br><br>Defendants. | No. 3:25-cv-10194-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Judge: Hon. Vince Chhabria<br>Courtroom: 4, 17th Floor<br>Hearing Date: April 16, 2026<br>Hearing Time: 2:00 pm |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 2

II. BACKGROUND .......... 3

III. LEGAL STANDARD FOR A MOTION TO DISMISS .......... 4

IV. LEGAL ARGUMENT .......... 5

A. Plaintiff's claims should be dismissed because they are subject to issue preclusion. .......... 5

1. The Facebook Court's final approval of the class settlement and its award of attorneys' fees, expenses and service awards are final for issue-preclusion purposes. .......... 6

2. As an absent class member, Plaintiff was a party to the Facebook litigation. .......... 6

3. Plaintiff's claims for malpractice and breach of fiduciary duty raise issues identical to issues actually litigated and necessarily determined in the Facebook Court's orders granting final approval to the class settlement and awarding attorneys' fees to co-lead counsel. .......... 7

B. Plaintiff fails to state claims that are plausible on their face. .......... 14

1. Plaintiff fails to state a legal malpractice claim that is plausible on its face. .......... 14

2. Plaintiff fails to state a claim for breach of fiduciary duty that is plausible on its face. .......... 19

3. Plaintiff fails to state a negligent misrepresentation claim that is plausible on its face. .......... 21

V. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... *passim*

*Bailey v. Wyndham Vacation Ownership, Inc.*,
No. 19-cv-05325-VC, 2019 WL 6836772 (N.D. Cal. Dec. 16, 2019) .......... 21

*Barnard v. Langer*,
1 Cal. Rptr. 3d 175 (Ct. App. 2003) .......... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 15, 16

*Bezdek v. Vibram USA, Inc.*,
809 F.3d 78 (1st Cir. 2015) .......... 18

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 20

*Borman v. Brown*,
273 Cal. Rptr. 3d 868 (Ct. App. 2021) .......... 21, 22

*Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*,
60 Cal. Rptr. 2d 207 (Ct. App. 1997) .......... 7

*Durkin v. Shea & Gould*,
92 F.3d 1510 (9th Cir. 1996) .......... 14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 15

*In re Facebook, Inc. Consumer Privacy User Profile Litigation*,
No. 3:18-md-02843-VC (N.D. Cal.) .......... *passim*

*Golden v. Pac. Maritime Ass'n*,
786 F.2d 1425 (9th Cir. 1986) .......... 7, 11

*Harmon v. Kobrin (In re Harmon)*,
250 F.3d 1240 (9th Cir. 2001) .......... 9

*In re Hyundai & Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) (en banc) .......... 14

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
458 F.3d 244 (3d Cir. 2006) ....................9

*Jones v. Whisenand*,
214 Cal. Rptr. 3d 72 (Ct. App. 2017) ....................14

*Kamilche Co. v. United States*,
53 F.3d 1059 (9th Cir. 1995), *amended on rehearing*, 75 F.3d 1391 (9th Cir. 1996) ......10, 11

*Key v. Tyler*,
246 Cal. Rptr. 3d 224 (Ct. App. 2019) ....................10

*Koehler v. Brody*,
483 F.3d 590 (8th Cir. 2007) ....................12

*Koehler v. Green*,
No. No. CV 405-367-JFN, 2006 WL 5605002 (E.D. Mo. Apr. 20, 2006) ....................14

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ....................18

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ....................5, 17

*Marshak v. Ballesteros*,
86 Cal. Rptr. 2d 1 (Ct. App. 1999) ....................10

*Martorana v. Marlin & Saltzman*,
96 Cal. Rptr. 3d 172 (Ct. App. 2009) ....................11, 13, 19

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) ....................18

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010) ....................20

*Molski v. Gleich*,
318 F.3d 937 (9th Cir. 2003), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (en banc), *rev'd*, 564 U.S. 338 (2011) ....................8

*Montana v. United States*,
440 U.S. 147 (1979) ....................5

*In re Optical Disk Drive Prods. Antitrust Litig.*,
959 F.3d 922 (9th Cir. 2020) ....................16

*Papasan v. Allain*,
478 U.S. 265 (1986) ....................16

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) .......... 5, 6, 17

*Rodriguez v. Lawrence Equip., Inc.*,
327 Cal. Rptr. 3d 188 (Ct. App. 2024) .......... 5, 6, 9, 18

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......... 18

*Samara v. Matar*,
419 P.3d 924 (Cal. 2018) .......... 5

*Semtek Int'l, Inc. v. Lockheed Martin Corp.*,
531 U.S. 497 (2001) .......... 5

*Shine v. Williams-Sonoma, Inc.*,
233 Cal. Rptr. 3d 676 (Ct. App. 2018) .......... 6

*Slovensky v. Friedman*,
49 Cal. Rptr. 3d 60 (Ct. App. 2006) .......... 8

*Stanley v. Richmond*,
41 Cal. Rptr. 2d 768 (Ct. App. 1995) .......... 19

*Starker v. United States*,
602 F.2d 1341 (9th Cir. 1979) .......... 11

*Syverson v. Int'l Bus. Machines Corp.*,
472 F.3d 1072 (9th Cir. 2007) .......... 6

*Taylor v. Sturgell*,
553 U.S. 880 (2008) .......... 5, 6, 11

*Thomas v. Powell*,
247 F.3d 260 (D.C. Cir. 2001) .......... 13

*United States v. Geophysical Corp. of Alaska*,
732 F.2d 693 (9th Cir. 1984) .......... 5

*United States v. Weems*,
49 F.3d 528 (9th Cir. 1995) .......... 8, 9

*Villacres v. ABM Indus. Inc.*,
117 Cal. Rptr. 3d 398 (Ct. App. 2010) .......... 6

*Wyly v. Weiss*,
697 F.3d 131 (2d Cir. 2012) .......... 11, 12

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1332(d) ....................5

**Other Authorities**

Fed. R. Civ. P. 5(b)(2)(F) ....................24

Fed. R. Civ. P. 8(a)(2) ....................3

Fed. R. Civ. P. 12(b)(6) ....................2, 4, 5

Fed. R. Civ. P. 23 ....................8, 19

Fed. R. Civ. P. 23(e) ....................9, 10

Fed. R. Civ. P. 23(e)(2)(C) ....................8

2 Ronald E. Mallen, *Legal Malpractice* § 15:3 (Jan. 2025 update) ....................7

Sup. Ct. R. 13 ....................6

5 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 15:65 (6th ed. Dec. 2025 update) ....................20

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, April 16, 2026, at 2:00 pm, or as such other date as may be agreed upon, in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Derek Loeser, Keller Rohrback L.L.P., Lesley Weaver, and Bleichmar Fonti & Auld LLP ("Defendants") will and hereby do move to dismiss. The Motion is based on this notice, the accompanying Memorandum in Support, the Request for Judicial Notice filed herewith in support of the Motion, and the files and records in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In October 2023, the Court approved a proposed classwide settlement in *In re Facebook, Inc. Consumer Privacy User Profile Litigation*, No. 3:18-md-02843-VC (N.D. Cal.) ("*Facebook*" or the "*Facebook* action") and awarded attorneys' fees, expenses, and service awards. Defendants Derek Loeser and Lesley Weaver serve as co-lead counsel in *Facebook*. Pro se Plaintiff David R. Pete now sues them, as well as the law firms Keller Rohrback L.L.P. and Bleichmar Fonti & Auld, LLP.[1] His complaint asserts that, in settling *Facebook* and securing an award of fees, Defendants committed malpractice, breached their fiduciary duty, and made misrepresentations. Plaintiff's complaint should be dismissed under Rule 12(b)(6).

*First*, Plaintiff's claims for malpractice and breach of fiduciary duty are barred by issue preclusion. Plaintiff's claims allege that the amount of the *Facebook* settlement was too small and that the attorneys' fee the Court awarded Defendants was excessive. Precisely these issues were contested at length before this Court and before the Ninth Circuit on appeal. They were expressly resolved against the class members that raised the issues and in favor of Defendants. As a member of the *Facebook* class, Plaintiff is bound by that determination and cannot relitigate it through this action.

*Second*, the complaint states no plausible claim for relief. Important parts of Plaintiff's complaint—particularly the allegations about Defendants' communications with Plaintiff and the *Facebook* class—contradict judicially noticeable documents, and must be disregarded for that reason. Any remaining factual allegations are legally inadequate. Some of them assert legal theories that are not cognizable. But the main story they tell is that, under the *Facebook* settlement, class members' individual recoveries were small compared to co-lead counsel's 25% fee. This story cannot be enough

[1] As to Defendants Lesley Weaver and Bleichmar Fonti & Auld LLP, Plaintiff has not perfected service, or requested waiver thereof, pursuant to Rule 4. These Defendants, however, waive service of the summons pursuant to Rule 4 and respond to Plaintiff's complaint.

on its own to state a plausible claim for malpractice, breach of fiduciary duty, or misrepresentation. Class actions are *designed* for situations in which individual injuries (and thus individual recoveries) are small, and a fee of 25% of the settlement fund is the benchmark within the Ninth Circuit. The *Facebook* Court closely scrutinized both the proposed settlement and co-lead counsel's requested fee, approved both, and the Ninth Circuit affirmed. In these circumstances, Plaintiff needs factual allegations—not conclusory assertions—that identify an investigation that co-lead counsel failed to make, a claim that co-lead counsel failed to assert, or a legal argument they failed to make, or that point to something that co-lead counsel failed to disclose to the Court in the approval process. Otherwise, all that Plaintiff has alleged is a large, duly approved settlement with small individual recoveries and a 25% fee. Such "an account," absent other factual allegations, "stays in neutral territory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "[W]ithout some further factual enhancement," Plaintiff's complaint "stops short" of meeting the "threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

For these reasons, Plaintiff's claims should be dismissed with prejudice.

## II. BACKGROUND

The subject of Plaintiff's complaint is *Facebook*, a class action brought on behalf of Facebook users who alleged their personal information was shared with third parties without their consent. First Am. Compl. for Damages ("Compl.") at 2 (Dkt. No. 1). Defendants Loeser and Weaver serve as co-lead counsel in *Facebook. Id.* After over four years of litigation, co-lead counsel reached a proposed $725 million classwide settlement with Facebook. *See generally* Request for Judicial Notice ("RJN"), Ex. 1 (filed herewith). The *Facebook* Court eventually granted final approval of the settlement and awarded co-lead counsel 25% of the settlement fund, or $181.25 million, in attorneys' fees. Compl. at 2–3.

Plaintiff alleges that he was a class member in *Facebook*. *Id.* at 2. He alleges that he received "settlement notices and other communications" from Defendants about the *Facebook* settlement. *Id.* at 4; *see also id.* (alleging that Plaintiff "relied on" these communications).

Plaintiff asserts claims for legal malpractice, breach of fiduciary duty, and misrepresentation against Defendants Loeser and Weaver, as well as against the Defendant law firms Keller Rohrback and Bleichmar Fonti & Auld. *Id.* at 1, 2; *see id.* at 3–4 (setting out the three claims). Plaintiff's complaint contains three bullet-pointed paragraphs to support these claims:

- Defendants, in their capacity as class counsel, failed to act in the best interests of Plaintiff. They failed to adequately communicate with class members, failed to explain the allocation of the settlement funds in a clear manner, and misrepresented the potential and actual recovery for individual class members like Plaintiff.
- The immense fee award obtained by Defendants, when contrasted with the likely nominal recovery for individual class members, demonstrates that Defendants were motivated by their own financial interests rather than the interests of the class they were duty-bound to represent. This conduct constitutes self-dealing.
- Defendants were negligent in their representation by failing to prosecute the case in a manner that would maximize recovery for the class, instead opting for a settlement that primarily benefited themselves.

*Id.* at 3. Plaintiff asks that he be awarded $186 million in compensatory damages, in addition to "punitive and exemplary damages." *Id.* at 5.

## III. LEGAL STANDARD FOR A MOTION TO DISMISS

When a motion to dismiss under Rule 12(b)(6) is filed, only "factual matter" in a complaint is "accepted as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court does not accept as true "legal conclusions"—i.e., "[t]hreadbare recitals of the element of a cause of action, supported by mere conclusory statements." *Id.*; *see also id.* (requiring more than "'naked assertion[s]' devoid of 'further factual enhancement'" (quoting *Twombly*, 550 U.S. at 557)). Even when a complaint contains "well-pleaded facts," moreover, it will survive a motion to dismiss only if those facts "state[] a plausible claim for relief." *Id.* at 679. "Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and hence should be dismissed. *Id.* at 678 (quotation and citation omitted).

When a defendant moves to dismiss under Rule 12(b)(6), a court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

## IV. LEGAL ARGUMENT

### A. Plaintiff's claims should be dismissed because they are subject to issue preclusion.

"[O]nce a court in a prior action has decided an issue of fact or law necessary to its judgment," the doctrine of issue preclusion "may preclude relitigation of the issue in a different cause of action involving a party to the prior case." *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984). Plaintiff's claims are barred by issue preclusion, because those claims raise issues that were actually litigated and necessarily decided against Plaintiff by the Court's final decisions in *Facebook*.

California and federal law impose the same three basic requirements for issue preclusion.[2] First, there must have been a final decision in the prior proceeding. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006); *Rodriguez v. Lawrence Equip., Inc.*, 327 Cal. Rptr. 3d 188, 196 (Ct. App. 2024). Second, an issue "identical" to the issue raised in the present proceeding must have been "actually litigated and necessarily decided," *Samara v. Matar*, 419 P.3d 924, 926 (Cal. 2018) (citation omitted), or "actually and necessarily determined," *Montana v. United States*, 440 U.S.

---

[2] Which body of law applies, California or federal, depends on how to characterize the prior judgment in *Facebook*. *Compare Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (law of forum state governs preclusive effect of diversity judgment), *with Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (federal law governs preclusive effect of federal-question judgment). In *Facebook*, the Court exercised diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), but the *Facebook* class also asserted some federal claims. The Court need not decide how to characterize the prior judgment, however, because it should reach the same result applying either the federal or the California law of issue preclusion. Where there are differences between the two bodies of law, Defendants discuss them—but they do not affect the result.

147, 153 (1979), in the prior proceeding. Third, that earlier decision of the issue must be asserted against a party, or against someone who is in privity with a party, to the first proceeding. *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007); *Rodriguez*, 327 Cal. Rptr. 3d at 196.

***1. The* Facebook *Court's final approval of the class settlement and its award of attorneys' fees, expenses and service awards are final for issue-preclusion purposes.***

The first requirement of issue preclusion, a final decision, is easily satisfied. The Court's last two substantive orders in *Facebook* granted final approval to the class settlement, RJN, Ex. 7, and awarded attorneys' fees, expenses, and service awards, *id.*, Ex. 8. These orders were appealed to and affirmed by the Ninth Circuit in February 2025. The period for filing a certiorari petition from the Ninth Circuit's decision has long since passed, *see* Sup. Ct. R. 13, and the Ninth Circuit has issued its mandate, RJN, Ex. 12. The Court's last two orders in *Facebook* easily qualify as "final" for purposes of issue preclusion. *See Syverson*, 472 F.3d at 1079 (according finality to decision of Eighth Circuit, even though there were to be "further proceedings on remand"); *Rodriguez*, 327 Cal. Rptr. 3d at 658 ("That the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." (citation omitted)); *see also Reyn's Pasta Bella*, 442 F.3d at 746 (final approval of settlement was final decision for issue-preclusion purposes).

***2. As an absent class member, Plaintiff was a party to the* Facebook *litigation.***

The third requirement of issue preclusion—the requirement that Plaintiff have been a party to the prior proceeding—is also satisfied. Plaintiff alleges that he was a member of the class in *Facebook*. Compl. at 2. For the purposes of preclusion, an absent class member like Plaintiff is generally considered a party to a prior certified class action. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008); *Villacres v. ABM Indus. Inc.*, 117 Cal. Rptr. 3d 398, 422 (Ct. App. 2010); *see also Shine v. Williams-*

*Sonoma, Inc.*, 233 Cal. Rptr. 3d 676, 681 (Ct. App. 2018) (applying issue preclusion to absent class member).

This rule makes sense, especially applied here. Plaintiff's complaint alleges that he received and reviewed the notice to the *Facebook* class: "Defendants, through settlement notices and other communications, made representations to Plaintiff and the class . . . . Plaintiff justifiably relied on these misrepresentations . . . ." Compl. at 4. As part of the class notice, Plaintiff was informed of how much co-lead counsel were seeking in attorneys' fees and was told how and when to present his objections to the settlement. *See* RJN, Ex. 2, App. F at 7–8 (long-form notice, questions 15–17); *id.*, Ex. 2, App. H at 2. He thus had "a full and fair opportunity to litigate" the issues he now raises through an objection and "during the fairness hearing[]." *Golden v. Pac. Maritime Ass'n*, 786 F.2d 1425, 1427–28 (9th Cir. 1986) (applying issue preclusion where there was a prior class settlement).

### 3. *Plaintiff's claims for malpractice and breach of fiduciary duty raise issues identical to issues actually litigated and necessarily determined in the* Facebook *Court's orders granting final approval to the class settlement and awarding attorneys' fees to co-lead counsel.*

#### a. Issues raised by Plaintiff's claim for legal malpractice are identical to issues actually litigated and necessarily determined in *Facebook*.

Plaintiff's claim for legal malpractice rests on the allegation that Defendants secured an inadequate settlement for him in *Facebook*—that Defendants did not "maximize recovery for the class" or "secure a settlement that was fair and reasonable . . . in light of the harm suffered and the fees awarded to counsel."[3] *See* Compl. at 3. When "the challenge is to the attorneys' competence in settling

[3] Plaintiff also alleges that Defendants sought and received a fee that was too high. This allegation goes to whether Defendants breached their fiduciary duty, not to whether they abided by their duty of competent representation (i.e., committed malpractice). If attorneys put their own interest above their client's and, in doing so, charge too high a fee, they have breached the duty of loyalty, which is a breach of fiduciary duty; it is not professional negligence. *See* 2 Ronald E. Mallen, *Legal Malpractice* § 15:3 (Jan. 2025 update); *see also, e.g.*, *Cal Pak Delivery, Inc. v. United Parcel Serv., Inc.*, 60 Cal. Rptr. 2d 207, 213 (Ct. App. 1997) (identifying attorney's duty of loyalty as flowing from the fiduciary relationship between attorney and client).

the underlying case," the question of negligence turns on "'whether the settlement is within the realm of reasonable conclusions.'" *Barnard v. Langer*, 1 Cal. Rptr. 3d 175, 182 n.13 (Ct. App. 2003) (quoting 4 Ronald E. Mallen, *Legal Malpractice* § 30.41 (5th ed. 2000)). "[T]he goal of a lawyer is to achieve a 'reasonable' settlement, a concept that involves a wide spectrum of considerations and broad discretion. . . . No lawyer has the ability to obtain for each client the best possible compromise but only a reasonable one." *Id.* (quoting 4 Mallen, *supra*, § 30.41)). This standard recognizes that claims like Plaintiff's "are likely to be speculative, as even the most skillful attorneys can seldom know whether they obtained the best possible result; thus they are held only to the standard of whether the settlement was *within the realm of reasonableness*." *Slovensky v. Friedman*, 49 Cal. Rptr. 3d 60, 67–68 (Ct. App. 2006) (emphasis added).

Whether the amount of the *Facebook* settlement was reasonable was "'necessarily' (and not 'presumably') decided in the first proceeding." *United States v. Weems*, 49 F.3d 528, 532 (9th Cir. 1995). When courts approve class settlements, Rule 23 directs them to consider whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C); *see also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (rejecting a settlement because it provided class members "with little or no compensation"), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) (en banc), *rev'd*, 564 U.S. 338 (2011). The *Facebook* Court followed that directive carefully, "applying the heightened scrutiny appropriate to settlements reached prior to a ruling on class certification," and finding that the settlement provided "excellent relief to the Settlement Class given the range of reasonable possible recoveries by the Settlement Class Members, especially since further litigation would likely be complex, expensive, and lengthy," and finding, too, that the settlement "provide[d] substantial benefits for the Class in light of the strengths and weaknesses of the claims asserted"—strengths and weaknesses that co-lead counsel and the Court had "carefully evaluated." RJN, Ex. 7, ¶ 10 at 3, 4. The Court, in short, "specifically concluded" that the amount of

the settlement was reasonable. *Weems*, 49 F.3d at 532. And it explicitly *rejected* the argument that the settlement was too small. *Id.*, Ex. 7, ¶¶ 11–12. The amount of the settlement was a "central issue" before this Court and on appeal. Because the issue was "litigate[d] . . . vigorously" and given "'close judicial attention,'" it met the necessity requirement for preclusion. *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 250 (3d Cir. 2006) (quoting *Commercial Assocs. v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1097 (1st Cir. 1993)). Thus, the "principles of fairness" that animate issue preclusion's necessary-to-the-judgment requirement are amply satisfied under federal law, *id.*, and even more clearly satisfied under California law, *see Rodriguez*, 327 Cal. Rptr. 3d at 196 (under California law, "necessarily decided" just "mean[s] that the issue was not entirely unnecessary to the judgment in the prior proceeding" (citation and internal quotation omitted)).

Because the reasonableness of the settlement amount was necessarily decided in *Facebook*, it was also actually litigated and decided under California law. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1248 (9th Cir. 2001) (explaining that, at least under California law, "[a]s a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated"). To the extent federal law differs on the standard for whether an issue was actually litigated and decided, the record in *Facebook* shows conclusively that objectors actually litigated whether the amount of the *Facebook* settlement was reasonable. They argued at length, before both this Court and the Ninth Circuit, that it was far too small. *E.g.*, RJN, Ex. 13 at 4–9; *id.*, Ex. 5 at Obj. 56, 3–7; *id.*, Ex. 6 at 11:25–14:7; *id.*, Ex. 9 at 11–19; *id.*, Ex. 10 at 3–18. This Court also actually rejected that contention, *id.*, Ex. 7, ¶¶ 11–12, a determination that the Ninth Circuit affirmed, *id.*, Ex. 11 at 2–4.

The issue raised by the Plaintiff's malpractice claim—whether the settlement is reasonable—is also, in practical terms, identical to the *Facebook* Court's consideration of whether the amount of the settlement was reasonable for purposes of Rule 23(e). This is certainly true under California's law of issue preclusion. Under California law, the issues are identical because they both require the same

factual determination about the value of the *Facebook* class's claims. *See Key v. Tyler*, 246 Cal. Rptr. 3d 224, 248 (Ct. App. 2019) ("The identical issue requirement for issue preclusion addresses whether identical factual allegations are at stake, not whether the ultimate issues or dispositions are the same." (citation and quotation omitted)).

The issues are also identical under the multifactor test that federal courts use. First, showing that a settlement is unreasonable for purposes of malpractice involves "substantial overlap" with the *Facebook* case in "evidence or argument," *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995), *amended on rehearing*, 75 F.3d 1391 (9th Cir. 1996). To prevail on his malpractice claim, Plaintiff must prove that "the value of his case" was worth more than it was "valued at for the purposes of settlement." *Marshak v. Ballesteros*, 86 Cal. Rptr. 2d 1, 4 (Ct. App. 1999).[4] That inquiry will substantially overlap with the evidence and argument presented during the *Facebook* settlement approval, where the correct value of the class's case was litigated at great length and was the subject of the Court's final-approval order. RJN, Ex. 7, ¶¶ 10(c)–(d), 12. Next, as Defendants noted above, the same rule of reasonableness governs both whether the settlement was adequate under Rule 23(e) and whether it breached the standard of care. *See Kamilche*, 53 F.3d at 1062 (asking whether the issues involve "application of the same rule of law"). Likewise, the "pretrial preparation and discovery" in *Facebook* "embraced the matter" that Plaintiff now raises. *Id.* The class in *Facebook* relied on the underlying discovery generated in that case to determine whether the settlement reasonably accounted for the value of the class's claims. *See, e.g.*, RJN, Ex. 1 at 21, 24, 27, 28–29; *see also id.*, Ex. 1 at 44–46. Plaintiff would have to rely on that same discovery to prove the correct value of his claim. Finally, Plaintiff's claim, which asserts that Defendants secured a class settlement that was inadequate in size, is also "closely related" to the approval of the *Facebook* settlement, in which the Court disagreed with

---

[4] The Plaintiff would *also* have to show causation—i.e., that, absent the alleged breach, Facebook would have settled for more than it did. *Marshak*, 86 Cal. Rptr. 2d at 4. But this simply shows that Plaintiff's claim *encompasses*, but is not limited to, the identical issue.

objectors and found that Defendants had secured a class settlement that was adequate in size. *Kamilche*, 53 F.3d at 1062. Ultimately, "[o]nly the connecting argument . . . differs." *Starker v. United States*, 602 F.2d 1341, 1345 (9th Cir. 1979). Instead of arguing that the settlement should not be approved because it afforded the class inadequate relief, as the objectors did in *Facebook*, Plaintiff argues that Defendants should be liable for malpractice because they secured the class inadequate relief. That difference in the connecting argument, however, is irrelevant to issue preclusion, which bars relitigation of an issue even if it "recurs in the context of a different claim." *Taylor*, 553 U.S. at 892.

Determining that Plaintiff's legal-malpractice claim is subject to issue preclusion is consistent with precedent. As the California Court of Appeal has noted, if, as here, "the issue on which a malpractice complaint is based has been considered and determined in the class action proceedings, the rulings of the class action court will be binding on members of the class and preclude reconsideration of those matters in another forum." *Martorana v. Marlin & Saltzman*, 96 Cal. Rptr. 3d 172, 180 (Ct. App. 2009) (citation omitted). Likewise, the Second Circuit has held that where an earlier federal court had approved a class settlement as fair, reasonable, and adequate, and had awarded fees that the court had found to be reasonable, class members were precluded from challenging the competence of class counsel's representation through a malpractice claim. *See Wyly v. Weiss*, 697 F.3d 131, 142 (2d Cir. 2012). And the Ninth Circuit has determined that a subsequent malpractice suit against class counsel was precluded by an earlier court's finding that the class settlement was fair and that class counsel's representation was adequate. *Golden*, 786 F.2d at 1428.

b. Issues raised by Plaintiff's claim for breach of fiduciary duty are identical to issues actually litigated and necessarily determined in Facebook.

In Plaintiff's claim for breach of fiduciary duty, he alleges that Defendants "structur[ed] and promot[ed] a settlement that prioritized their own financial enrichment through a grossly disproportionate fee award over the financial recovery of the class members," allowed a "conflict[] of

interest" to develop "between their own financial objectives and the objectives of the Plaintiff and the class," and "[p]lac[ed] their own interests ahead of their client's interests." Compl. at 4.

As he pleads it, Plaintiff's breach-of-fiduciary-duty claim is premised on the notion that Defendants sought and received excessive attorneys' fees. But whether the amount of attorneys' fees that Defendants sought and received was reasonable was exhaustively litigated in the *Facebook* action. Objectors maintained, before this Court and on appeal, that a fee of 25% of the settlement fund was excessive and unreasonable. RJN, Ex. 5 at Obj. 56, 8–10; *id.*, Ex. 9 at 26–32; *id.*, Ex. 13 at 11–13. The Court expressly rejected that argument in its order awarding attorneys' fees, *id.*, Ex. 8, ¶¶ 6–7, and the Ninth Circuit affirmed, *id.*, Ex. 11 at 5–6. The issue on which Plaintiff's claim turns was thus actually litigated and determined in *Facebook*.

It was also *necessarily* determined. The Court could not have awarded a 25% fee if it had not determined that the fee was reasonable, and did not bestow a windfall on counsel, under "all the circumstances of the case." *Id.*, Ex. 8, ¶ 6 (quoting *Vizcaino v. Microsoft*, 290 F.3d 1043, 1048 (9th Cir. 2002)).

Finally, the issue that Plaintiff's complaint raises is identical to the issue that the Court decided, simply because the Court could not have reached the conclusion it did if Plaintiff's allegations were correct. The Court could not have awarded a 25% fee unless it concluded (at the least) that Defendants had adequately represented the class and that the fee was not disproportionate to the results obtained. This is the conclusion that the Second, Eighth, and D.C. Circuits reached in analogous circumstances. *See Wyly*, 697 F.3d at 142 (allegations that "[c]lass counsel 'abandoned their fiduciary duties'" through a settlement, that the settlement "'yielded pennies for the victimized public shareholders, but over $40 million in attorneys' fees'" for class counsel, and that the fees "constitute[d] unjust enrichment" were precluded by approval of settlement and award of fees); *Koehler v. Brody*, 483 F.3d 590, 596–99 (8th Cir. 2007) (claim for breach of fiduciary duty was precluded by final approval and award of fees in

prior class action); *Thomas v. Powell*, 247 F.3d 260, 263–65 (D.C. Cir. 2001) (claim that class counsel "breached a duty of undivided loyalty" was precluded by final approval and finding of adequate representation).

c. Applying issue preclusion here is consistent with the policies underlying the doctrine—and does not provide blanket immunity to class counsel.

In determining whether to apply issue preclusion, California courts examine "the public policies underlying" the "doctrine to determine if the facts of the case merit its application." *Martorana*, 96 Cal. Rptr. 3d at 179.

A California court has already examined those policies as they apply to a case like this one. In *Martorana*, an absent class member alleged that class counsel had committed malpractice in their design of a class settlement. *See id.* at 175–76. The California Court of Appeal held that this suit was barred by issue preclusion, because the plaintiff was trying to challenge a judicially approved procedure, "and thus, to relitigate an issue that was actually decided in the prior class action proceeding." *Id.* at 179. It held that public policy made application of issue preclusion "particularly warranted." *Id.* at 180. It reasoned that "a class action court 'expects that its findings on the fairness of a settlement, adequacy of notices, and adequacy of class representation are final and have the force of law.'" *Id.* (quoting *Thomas v. Albright*, 77 F. Supp. 2d 114, 123 (D.D.C. 1999)). Allowing the plaintiff's malpractice suit to proceed "would undermine the authority of the class action court" and "result in the relitigation of issues" that had already been "decided in the prior class action proceeding." *Id.* Moreover, the plaintiff had received "a full and fair opportunity to object" before approval. *Id.* at 180–81. The same considerations favor preclusion here.

Recognizing preclusion under the circumstances here, moreover, does not provide blanket immunity to class counsel from subsequent malpractice suits. Here, the objectors in the *Facebook* case actually raised, and the *Facebook* Court actually decided, precisely the issues that Plaintiff wishes to relitigate through his claims. If class counsel incompetently failed to discover an important fact about

the case before final approval, or if they failed to disclose to the court such a fact before final approval, a later malpractice case might be able to proceed. *See Koehler v. Green*, No. No. CV 405-367-JFN, 2006 WL 5605002, at *8 (E.D. Mo. Apr. 20, 2006) (distinguishing *Durkin v. Shea & Gould*, 92 F.3d 1510 (9th Cir. 1996) on this basis). In other words, if a malpractice plaintiff alleges that class counsel's incompetence or lack of candor caused a court to erroneously approve a settlement, such a claim may not be barred by claim preclusion. But that is not this case. Plaintiff has not claimed that Defendants withheld any information from the Court, and his only allegation of incompetence is wholly conclusory. *See* Compl. at 3 (Defendants "[f]ail[ed] to adequately investigate and pursue claims").

## B. Plaintiff fails to state claims that are plausible on their face.

### *1. Plaintiff fails to state a legal malpractice claim that is plausible on its face.*

In California, a claim for legal malpractice requires a plaintiff to show, among other things, that an attorney breached the duty "to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise." *Jones v. Whisenand*, 214 Cal. Rptr. 3d 72, 76–77 (Ct. App. 2017) (citation omitted).[5] Here, Plaintiff fails to plausibly allege that Defendants breached that duty here.

#### a. The Complaint's assertions about the class's individual recoveries and Defendants' fees do not plausibly allege that Defendants breached a duty.

Once the complaint's conclusory statements are disregarded, as they must be, *Iqbal*, 556 U.S. at 678, Plaintiff's claim for legal malpractice is largely premised on a comparison between co-lead counsel's attorneys' fees and class members' individual recoveries. Thus, to "demonstrate[] that Defendants were motivated by their own financial interests rather than the interests of the class they were duty-bound to represent," Plaintiff points to what he calls "[t]he immense fee award obtained by

[5] Given the complaint's silence on the body of common law it is invoking, the Court should apply California law here. *See In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc).

Defendants, when contrasted with the likely nominal recovery for individual class members." Compl. at 3; *see also id.* ("Defendants were negligent in their representation by failing to prosecute the case in a manner that would maximize recovery for the class, instead opting for a settlement that primarily benefited themselves"). But these allegations, especially seen in light of the *Facebook* Court's approval of the settlement and award of fees, do not state a claim for legal malpractice that is plausible on its face.

Class actions exist because "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation omitted). Class actions solve this problem by aggregating small individual damages. *See id.* That is just what happened in *Facebook*: class members' small individual recoveries added up to an enormous aggregate recovery for the class. The size of the individual recoveries that Plaintiff alleges, therefore, cannot by themselves show malpractice. *Cf. Twombly*, 550 U.S. at 553–54 (noting that parallel business behavior cannot by itself make out an antitrust violation). And while Plaintiff states that the settlement was not "fair and reasonable . . . in light of the harm suffered," Compl. at 3, that statement is a conclusory assertion about the *Facebook* lawsuit's value that "does not cite any documents or sources for this value, nor does it explain the methodology by which this value was derived." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 (9th Cir. 2014) (declining to consider a conclusory assertion about valuation). It does not identify a line of investigation that co-lead counsel failed to pursue, a claim they failed to assert, or a legal argument they failed to make. Instead, the complaint asserts merely that Defendants "[p]rioritized the negotiation and acquisition of an excessive attorneys' fee award over the interests of Plaintiff and the class,"

Compl. at 3, which is "a legal conclusion couched as a factual allegation" that courts "are not bound to accept as true."[6] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Nor does Defendants' 25% attorneys' fee award "nudg[e] [Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Ninth Circuit has set a 25% fee as the benchmark fee in class actions, and while percentage fees tend to decrease as settlement funds enlarge, judicially noticeable documents show that the Court awarded a 25% fee to Defendants in part because a lodestar cross-check "yield[ed] a multiplier of 1.99 on total hours billed as of May 31, 2023," RJN, Ex. 8, ¶ 2, a multiplier that the Court found was "below average in settlements of comparable size," *id.*, Ex. 8, ¶ 12. In any event, the Ninth Circuit has rejected any "bright-line rule requiring the use of sliding scale fee awards for class counsel in megafund cases." *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 933 (9th Cir. 2020). That is one of the reasons the Ninth Circuit affirmed the Court's award of fees. *See* RJN, Ex. 11 at 6 ("The district court also properly rejected, as we do here, Objectors' argument that the fee award must be set substantially below 25% because of the settlement fund's size. We have not required fee percentages to fall in relation to the size of a class settlement."). Defendants' receipt of a court-approved 25% fee, in short, is not wrongdoing. It is not enough to state a plausible claim. *See Twombly*, 550 U.S. at 557.

Plaintiff's factual allegations must also be evaluated in the larger (and judicially noticeable) context of the *Facebook* litigation. *See Iqbal*, 556 U.S. at 663–64 ("[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense."). Once the parties had reached a proposed settlement, the Court carefully scrutinized it twice—once at preliminary approval, and again at final approval (after considering objections to the fees). It applied considerable "skepticism" to co-lead counsel's requested award of fees. RJN, Ex. 8, ¶

[6] As noted earlier, moreover, the legal conclusion here—that Defendants breached their duty to put the class's interests before their own—is relevant to the claim for breach of fiduciary duty, not to the claim for legal malpractice. *See supra* at 7 n.3.

2. Given the Court's close scrutiny of precisely what he now challenges through this lawsuit, Plaintiff should be obliged to identify some fact or argument that Defendants hid or failed to present to the *Facebook* Court before it approved the settlement and awarded fees. Having failed to do so, Plaintiff's malpractice claim should be dismissed.

b. The Complaint's assertions about Defendants' communications with Plaintiff and the class fail to state a claim for malpractice.

The remainder of Plaintiff's malpractice claim arises out of alleged miscommunications. Plaintiff alleges that Defendants "failed to explain the allocation of the settlement funds in a clear manner," and "misrepresented the potential and actual recovery for individual class members like Plaintiff." Compl. at 3; *see also id.* (Defendants did not "properly communicate with Plaintiff regarding . . . the allocation of funds"). To the extent these allegations about Defendants' communications go beyond mere conclusions, they are legally inadequate to state a claim for legal malpractice.

*First*, several allegations contradict judicially noticeable documents and should be disregarded. *Lazy Y Ranch*, 546 F.3d at 588. Namely, Plaintiff alleges that Defendants "failed to explain the allocation of the settlement funds in a clear manner." Compl. at 3. But when seeking preliminary approval of the class settlement in *Facebook*, Defendants submitted the notices they planned to send the class. As court filings, these notices are subject to judicial notice—not for the truth of their contents, but simply to show that Defendants made certain statements in them. *See Reyn's Pasta Bella*, 442 F.3d at 746 n.6. The Court-approved long-form notice explains the allocation of the settlement funds in several paragraphs consisting of short, simple declarative sentences. RJN, Ex. 2, App. F at 5 (long-form notice, question 8). Defendants thus *did* explain the allocation of the settlement funds in a clear manner, Plaintiff's assertion to the contrary notwithstanding.

Likewise, Plaintiff's assertion that Defendants "misrepresented the potential and actual recovery for individual class members like Plaintiff" is contradicted by the long-form notice.

Defendants made no representation there about how much individual class members would recover in the settlement. RJN, Ex. 2, App. F. The closest Defendants ever came to any such representation was at the final-approval hearing, when they divided the Net Settlement Fund by the total number of claims submitted—while explicitly cautioning that this number would not reflect what individual class members would receive and was based on certain assumptions that might not turn out to be true. *See* RJN, Ex. 6 at 9:21–10:7. The number that Defendants gave at the final-approval hearing, in any event, turned out to be only 2.5% away from the actual average recovery per claimant. *Compare id.*, *with* RJN, Ex. 14 at 4; *see also McAdams v. Robinson*, 26 F.4th 149, 158–59 (4th Cir. 2022) (class notice was adequate even though it did not estimate class members' recovery); *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82–83 (1st Cir. 2015) (holding that settlement notice was adequate even though it estimated a $20 to $50 recovery for each claim while actual recovery was only $8.44, since the notice "provided an estimated range of recovery but did not guarantee any amount of recovery").

*Second*, any allegations that are not contradicted by judicially noticeable documents fail to state a cognizable claim. At points, the complaint appears to assume that Defendants had a duty to tell class members what their potential recovery would have been if the case had been successfully litigated to judgment. *See* Compl. at 3 (speaking of "potential recovery"). But the Ninth Circuit has expressly held that there is no duty to estimate potential recovery in communications to the class. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (rejecting argument that notice should have informed class members of "the expected value of fully litigating the case"); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (holding that not even courts themselves are required to give a number for what a class would have received); *Rodriguez*, 563 F.3d at 965–66 (same).

If Plaintiff is also asserting that Defendants, as co-lead counsel, had a duty to affirmatively reach out and make *individual* contact with him, *see* Compl. at 3 ("Failing to properly communicate *with Plaintiff* . . . ." (emphasis added)), that assertion is wrong. That duty does not exist, and for good

reason: it would create extravagant burdens with little incremental benefit, since Rule 23 already requires communications with absent class members in the form of class notice. *Cf. Martorana*, 96 Cal. Rptr. 3d at 181 ("Moreover, as the trial court noted, it would defeat the purpose of mass notification to class members if attorneys for the class had an obligation, beyond the duty of due care, to follow up with each and every class member who failed to file a timely claim form.").

***2. Plaintiff fails to state a claim for breach of fiduciary duty that is plausible on its face.***

A claim for breach of fiduciary duty, as the name suggests, requires the plaintiff to show that a defendant breached his or her fiduciary duty. *Stanley v. Richmond*, 41 Cal. Rptr. 2d 768, 776 (Ct. App. 1995). Plaintiff's claim fails to plausibly allege any such breach. To the extent Plaintiff's allegations go beyond "mere conclusory statements," *Iqbal*, 556 U.S. at 678, they either (1) contradict judicially noticeable documents; (2) state no legally cognizable claim, or (3) fail, as did the legal malpractice claim, to make concrete factual allegations that plausibly suggest a fiduciary breach.

*First*, Plaintiff asserts that Defendants breached their fiduciary duty by failing to disclose "the manner in which their fee request would drastically reduce the recovery available to individual class members." Compl. at 4. That assertion, however, contradicts statements that are subject to judicial notice. In the *Facebook* long-form notice, Defendants informed class members that they would "ask the Court for an award of attorneys' fees not to exceed 25% of the Settlement Fund, as well as reasonable expenses incurred in litigation." RJN, Ex. 2, App. F at 7 (long-form notice, question 15). Along with information about the size of the Settlement fund, *see id.*, Ex. 2, App. F at 4 (long-form notice, question 7), this statement allowed class members to calculate how much the potential award would reduce the amount of funds available to class members. Plus, Defendants moved for attorneys' fees, expenses, and service awards on June 21, 2023, *id.*, Ex. 4, more than a month in advance of the July 26, 2023 deadline for objections, *id.*, Ex. 3, ¶ 15. The motion asked for 25% of the settlement fund in attorneys' fees. *Id.*, Ex. 4 at 2. The content of the motion and its timing gave class members more

than enough time to consider and, if they deemed it appropriate, to object to the fee request. *See generally In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010). Judicially noticeable facts, in short, show that Defendants fully disclosed the amount of money they were seeking out of the settlement fund in attorneys' fees, expenses, and service awards, and thus necessarily disclosed how much would be left to distribute to class members. Plaintiff's allegation to the contrary should be disregarded.

*Second*, Plaintiff alleges that Defendants "[f]ailed to avoid conflicts of interest between their own financial objectives and the objectives of the Plaintiff and the class." Compl. at 4. If this allegation is simply asserting that Defendants placed their own interests above the interests of the class, it is a legal conclusion that omits supporting facts and should be disregarded. If the allegation is asserting Defendants breached their fiduciary duty by seeking fees out of the same fund from which the class would recover money, that allegation must fail as a matter of law. It cannot constitute legal malpractice to seek attorneys' fees under a common-fund theory that has been recognized since at least the late nineteenth century. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citing *Centr. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885); *Trustees v. Greenough*, 105 U.S. 527 (1882)). Indeed, awarding class counsel a percentage of the settlement fund *aligns* their financial interests with the interests of the class: "Under the percentage method, counsel have an interest in generating as large a recovery for the class as possible, as their fee increases with the class's take." 5 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 15:65 (6th ed. Dec. 2025 update) (citing cases). To the extent a potential conflict of interest exists at "the fee-setting stage" in a class action, that potential conflict is mitigated by the presiding court's role as a fiduciary for the class, *see Mercury Interactive*, 618 F.3d at 994, and exists in every common-fund class action. This potential conflict of interest cannot constitute legal malpractice, because otherwise the common-fund doctrine would constitute *per se* legal malpractice. That cannot be the law.

*Third*, Plaintiff's central factual allegation—that Defendants received 25% of a $725 million settlement fund, while the average recovery for each claimant was small[7]—cannot state a plausible claim for reasons already discussed. Without factual allegations identifying some lack of disclosure in the fee-approval process, receipt of a court-approved 25% fee cannot itself be a breach of fiduciary duty. *See supra* § IV.B.1.a.

***3. Plaintiff fails to state a negligent misrepresentation claim that is plausible on its face.***

A claim for negligent misrepresentation has five elements requires a plaintiff to show, among other things, that defendants misrepresented "a past or existing material fact." *Borman v. Brown*, 273 Cal. Rptr. 3d 868, 879 (Ct. App. 2021) (citation omitted). Here, Plaintiff's claim does not plausibly allege that Defendants misrepresented any fact.

To begin, the complaint's conclusory statements are insufficient to plausibly allege that Defendants misrepresented a past or existing material fact. The allegation about Defendants' "representations . . . regarding the nature of the litigation and the benefits of the proposed settlement," Compl. at 4, is so vague as to make it impossible for Defendants to know which representations Plaintiff believes are actionable. *See Bailey v. Wyndham Vacation Ownership, Inc.*, No. 19-cv-05325-VC, 2019 WL 6836772, at *2 (N.D. Cal. Dec. 16, 2019) (dismissing claims, including claims of negligent misrepresentation, because they "did not plead facts sufficient to place the defendants on notice of what wrongdoing is alleged").

Plaintiff alleges that Defendants made "false or misleading" representations because "they failed to accurately portray the grossly disproportion allocation of settlement funds to attorneys' fees

[7] That is what Defendants take to be the point of Plaintiff's assertion that they "engag[ed] in self-dealing by structuring and promoting a settlement that prioritized their own financial enrichment through a grossly disproportionate fee award over the financial recovery of the class members." Compl. at 4. This assertion—when shorn of epithets and legal conclusions, boiled down to facts that are consistent with judicially noticeable documents, and read liberally—alleges that Defendants received a large fee from the *Facebook* settlement fund and that individual class members' recoveries were too small.

versus the recovery for individual class members." Compl. at 4. As noted above in the discussion of the malpractice claim, however, any allegation that Defendants misstated how the Settlement Fund would be allocated is contradicted by judicially noticeable documents: the long-form notice and the transcript of the final-approval hearing. The allegation should therefore be disregarded.

Finally, Plaintiff alleges that Defendants "presented the settlement as a substantial victory for the class when it was, in effect, a substantial victory for counsel." Compl. at 4. This conclusory allegation, however, identifies nothing in any settlement notice or other class communication that misrepresented a "past or existing material fact." *Borman*, 273 Cal. Rptr. 3d at 879. Indeed, the communications accurately described the benefits of the settlement and the bases for the fees sought by class counsel. There was nothing inaccurate or incomplete about the communications.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss with prejudice.

DATED this 10th day of March, 2026.

**KELLER ROHRBACK L.L.P.**

By: *s/ Benjamin Gould*
Benjamin Gould (SBN 250630)
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
(206) 623-1900
Fax (206) 623-3384
bgould@kellerrohrback.com

*Attorney for Defendants DEREK LOESER and KELLER ROHRBACK L.L.P.*

**WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

By: *s/ Pamela B. Bumatay*
PAMELA B. BUMATAY (SBN 244722)
655 Montgomery St., Ste. 900
San Francisco, CA 94111
415.433.0990
415.434.1370 (Fax)
Pamela.bumatay@wilsonelser.com

*Attorneys for Defendants BLEICHMAR FONTI & AULD LLP, a Limited Liability Partnership, and LESLEY WEAVER, an Individual*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Benjamin Gould, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of March, 2026, at Portland, Oregon.

*/s/ Benjamin Gould*
Benjamin Gould

## CERTIFICATE OF SERVICE

I, Benjamin Gould, hereby certify that on March 10, 2026, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record.

In addition, on March 10, 2026, I caused the foregoing, as well as the supporting declaration, to be transmitted via email to David R. Pete at dpetedavidpete@yahoo.com, in accordance with the prior written consent of David R. Pete. *See* Fed. R. Civ. P. 5(b)(2)(F).

/s/ *Benjamin Gould*
Benjamin Gould